IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| William Grecia,<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>Sony Network Entertainment International, LLC<br><br>　　　Defendant. | Case No.<br><br><br>Judge:<br>Magistrate Judge:<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

William Grecia brings this patent-infringement action against Sony Network Entertainment International, LLC.

### Parties

1. William Grecia lives in Brooklyn, New York.

2. Sony is a company organized under the laws of Delaware, with its principal place of business located at 6080 Center Drive, 10th Floor, Los Angeles, California 90045.

### Jurisdiction and Venue

3. This action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

4. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court may exercise personal jurisdiction over Sony. Sony conducts continuous and systematic business in Illinois and this District. For example, Sony

designs and manufactures computer software, consumer electronic products, and computers that Sony licenses and sells in this District. Sony uses a cloud-computing system that authorizes users in this District access to digital content such as movies and video games. This patent-infringement claim arises directly from Sony's continuous and systematic activity in this District. In short, this Court's exercise of jurisdiction over Sony would be consistent with the Illinois long-arm statute, 735 ILCS 5/2-209, and traditional notions of fair play and substantial justice.

6. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(b).

**Background**

7. William Grecia owns United States Patent 8,533,860 (the "'860 patent") and at least one continuing application claiming back to the original priority date of March 21, 2010. William Grecia invented the methods and products claimed in the '860 patent.

8. The field of the invention of the '860 patent is digital rights management, commonly referred to as "DRM." The movement of books, movies, and music to digital form has presented a challenge to the copyright owners of the content. The owners wish to sell the content in a digital form and transfer all attributes of ownership to the buyer, and yet the owners of the content must protect value by preventing "pirating" of the content through illicit copying.

9. DRM schemes to date had locked the purchased content, a movie for example, to specific devices and in some cases limited playback rights to a single device. These prior art DRM methods required the content providers (a movie studio in the

example) to maintain computer servers to receive and send session authorization keys to clients, and the prior DRM methods required that the client reconnect with the servers to obtain reauthorization. These DRM schemes may be characterized by limiting acquired content to a specific device that the client continually had to reauthorize to enjoy the acquired content.

10. The '860 invention provides a solution. With this invention, a consumer of digital content may enjoy the content on a multiple number of the consumer's devices and share the content with the consumer's friends and family, all while protecting against unlicensed use of the digital content.

### Claim of Patent Infringement

11. William Grecia is the exclusive owner of the '860 patent, which is attached as Exhibit 1.

12. The '860 patent is valid and enforceable.

13. Sony has and is directly infringing claims of the '860 patent. Sony makes, uses, sells, and offers for sale products, methods, equipment, and services that practice claims 1, 2, 3, 4, 5, 9, 10, 21, 22, 25, 28, and 29 of the '860 patent.

14. For example, and without limiting the '860 patent claims that will be asserted in this action or the Sony devices and services accused of infringing the '860 patent claims, Sony's cloud computing service directly infringes claim 1 of the '860 patent.

15. Claim 1 is "[a] method for authorizing access to digital content using a cloud system . . . ." Sony practices a method of authorizing access to digital content:

"Get connected. Sony Entertainment Network instantly delivers music, movies, games and more." http://www.sonyentertainmentnetwork.com/home.

16. The method of claim 1 is one "facilitating access rights between a plurality of devices . . . ." Sony sells its service as follows: "Watch, listen, play and share across multiple devices." http://www.sonyentertainmentnetwork.com/home.

17. According to the method of claim 1, a read or write request of metadata of the digital content is received. This request comprises a verification token of a user, such as, for example, the user's email address and password. "To create your account . . . fill in your email address (this will be your Sign-In ID) . . . ." http://us.support.sonyentertainmentnetwork.com/app/answers/detail/a_id/14.

18. A Sony user requests access to her digital content by requesting that Sony write her email address and password to metadata of the digital content: "Simply sign in with your existing ID and password and get started enjoying a whole host of digital entertainment services on the Sony Entertainment Network, Today!" https://account.sonyentertainmentnetwork.com/pc/reg/account/create-account!input.action .

19. In claim 1, after the verification token has been authenticated, a connection is established between a communications console and a server. The connection is established through a web service capable of facilitating a two-way exchange between the console and the server relaying the unique identity of the devices for which access to the digital content is sought. Sony establishes a connection between the communications console (e.g., Sony app running on device) and the Sony servers. Sony's web services capable of facilitating a two-way exchange to complete the

verification process include Music Unlimited, Video Unlimited, and PlayStation Network. *See* Sony's SEN Account Manager.

20. Next, claim 1 involves the step of requesting an identification reference, such as a unique identifier associated with a device for which the user wishes access to digital content. Sony apps request and receive a personal identification number, and the Sony apps subsequently request and receive subscription account identifier and rights tokens pertaining to the Sony account and cloud services.

21. Finally, claim 1 involves writing either the verification token or the identification reference into the metadata. Sony writes, among other things, the user's device information into the metadata stored on Sony servers, authorizing the user access to the content stored on the servers: "PlayStation®Plus helps you discover a world of extraordinary gaming experiences through the ever-expanding collection of great games that members receive access to as part of their membership." http://us.playstation.com/ps4/index.htm.

22. Sony knows of the '860 patent and nonetheless willfully infringes the claims, contributes to the infringement of the claims, and induces the infringement of the claims. Sony actually knows of the '860 patent. Sony disclosed the '860 patent as prior art in patent application 13/312,184.

23. Sony sells devices that contain components for use in practicing the steps of the claims of the '860 patent. These components within these devices perform a material part of claims of the '860 patent. Sony knows that these components on these devices are especially adapted for use in infringement of the '860 patent claims. These components on these devices are not suitable for a substantial non-infringing use.

24. Sony induces consumers of telephones, tablet computers, laptop computers, and desktop computers to infringe the '860 patent claims.

## Prayer for Relief

WHEREFORE, William Grecia prays for the following relief against Sony:

(a) Judgment that Sony has directly infringed claims of the '860 patent claims;

(b) Judgment that Sony has contributed to the infringement of the '860 patent claims;

(c) Judgment that Sony has induced the infringement of the '860 patent claims;

(d) For a fair and reasonable royalty;

(e) For treble damages based on a finding that the infringement of the '860 patent claims was willful;

(f) For pre-judgment interest and post-judgment interest at the maximum rate allowed by law;

(g) For such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

William Grecia demands a trial by jury on all matters and issues triable by jury.

Date: December 6, 2013                 /s/ Matthew M. Wawrzyn
                                                    Matthew M. Wawrzyn
                                                    Stephen C. Jarvis
                                                    WAWRZYN LLC
                                                    233 S. Wacker Dr., 84th Floor
                                                    Chicago, IL 60606
                                                    (312) 283-8330
                                                    matt@wawrzynlaw.com
                                                    stephen@wawrzynlaw.com

                                                   *Counsel for William Grecia*